CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

DEC 0 7 2009

JOHN F. CORCORAN, CLERK
BY:
　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | Case No. 5:06CR00008 |
|  | ) | (Case No. 5:09CV80169) |
| v. | ) ) | MEMORANDUM OPINION |
|  | ) |  |
| EUGENE ROSS COUSINS, | ) ) | By: Glen E. Conrad United States District Judge |
| Defendant. | ) |  |

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255. Upon review of the record, the court finds that the government's motion to dismiss must be granted, as the defendant waived his right to bring this action.

## I. Background

Police in Waynesboro, Virginia arrested Eugene Ross Cousins on three separate occasions: November 19, 2004, June 14, 2005, and November 19, 2005. In each instance, police stopped Cousins while he was operating a motor vehicle, and from evidence noted during each of these stops, authorities charged him in state court with possession of methamphetamine and possession of a firearm while in possession of a controlled substance. On February 22, 2006, a grand jury sitting in the Western District of Virginia returned a multi-count indictment, charging Cousins with distribution of methamphetamine (Count 1), possession of a firearm in furtherance of a drug trafficking offense (Counts 2, 5, and 8), possession of a firearm while being a user of controlled substances (counts 3, 6, and 9), and possession with intent to distribute

methamphetamine (Counts 4 and 7). Counts 1, 2, and 3 related to his first arrest; Counts 4, 5, and 6 related to the second arrest; and Counts 7, 8, and 9 related to the third arrest.

The court appointed counsel for Cousins under the Criminal Justice Act ("CJA"). Counsel moved on June 6, 2006 to suppress evidence obtained from the defendant's person and his automobile as a result of the November 19, 2004 traffic stop. Before the court decided the motion, the court permitted CJA counsel to withdraw and appointed the Federal Public Defender's Office to represent Cousins. Thereafter, on January 16, 2007, the court conducted an evidentiary hearing on the suppression argument and issued an opinion on February 1, 2007, denying the motion. Shortly thereafter, Cousins entered into a plea agreement whereby he would enter a conditional plea to Counts 1 through 6. In exchange, the government agreed to dismiss Counts 7, 8, and 9. Section 2 of the plea agreement read, in pertinent part:

> I expressly reserve the right to appeal this Court's rulings on my pretrial motions to suppress the evidence and I also expressly reserve my right to appeal the court's ruling on my motion to sever certain Counts of the Indictment for multiple trials, as detailed in the Court's Memorandum and Order entered February 1, 2007. I understand that, should I prevail on these issues on appeal, my case will be sent back to this Court and I may withdraw this plea. If the Court of Appeals affirms this Court's rulings, I will remain bound by this plea and by the sentence of this Court.

In Section 9 of the agreement, except as to the right to appeal the two pretrial rulings reserved in Section 2, Cousins waived his right to appeal whatever sentence would be imposed on any other ground. Section 10 of the agreement read:

> I further agree to waive my right to collaterally attack, pursuant to [28 U.S.C. §] 2255, the judgment and any part of the sentence imposed on me by the Court. This means that I will not file a petition with the Court at some later date complaining about the fact of my conviction or the sentence imposed on me.

Cousins pleaded guilty pursuant to the plea agreement on February 27, 2007, before the United States Magistrate Judge, who then issued a report and recommendation, finding that Cousins had entered a knowing and voluntary plea and recommending its acceptance. On July 3, 2007, noting that Cousins had filed no objections to the magistrate judge's report, the court adopted the report, thereby accepting the guilty plea. The court sentenced Cousins on August 8, 2007 to a total term of 406 months imprisonment.

As provided under the plea agreement, Cousins appealed, arguing that the evidence against him as to Counts 1, 2, and 3 should have been suppressed. The United States Court of Appeals for the Fourth Circuit affirmed the judgment below and denied the appeal on July 7, 2008. See United States v. Cousins, 291 Fed. App'x 497 (4th Cir. 2008).

Cousins signed and dated his § 2255 motion on June 29, 2009. He alleges the following grounds for relief under § 2255, related to the evidence seized after the traffic stop on November 19, 2004:

1. Counsel provided ineffective assistance of counsel by failing to argue during the suppression hearing that the defendant was seized and arrested in violation of the Fourth Amendment when he was detained during the searches of his vehicle;

2. Counsel provided ineffective assistance of counsel by failing to argue during the suppression hearing that the search of the defendant's locked brief case found in his vehicle violated his rights under the Fourth Amendment;

3. Counsel provided ineffective assistance of counsel by failing to argue during the suppression hearing that the first search of the trunk of the defendant's vehicle violated his rights under the Fourth Amendment;

4. Counsel provided ineffective assistance of counsel by failing to argue during the suppression hearing that the second search of the trunk of the

defendant's vehicle, based on a false alert by a police drug dog, violated his rights under the Fourth Amendment; and

5. Cousins would not have entered a conditional guilty plea but for counsel's ineffectiveness identified in Grounds 1-4.[1]

The government filed a motion to dismiss, arguing that Cousins' waiver of § 2255 rights should bar review of his claims, and Cousins responded. Now that the transcript of the guilty plea hearing has been filed, the motions are ripe for disposition.

## II. Discussion

### A. Waiver of § 2255 Rights

"The advantages of plea bargains [to all concerned] 'can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality.'" United States v. Lemaster, 403 F.3d 216, 219-20 (4th Cir. 2005) (quoting Blackledge v. Allison, 431 U.S. 63, 71 (1977). To further such ends, the United States Court of Appeals for the Fourth Circuit in Lemaster held that "a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." Id. at 220. Whether a waiver of rights is knowing and intelligent depends "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused" during the plea colloquy. United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). In making this determination, the court necessarily must rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy.

---

[1] Cousins added this fifth claim by amendment on or about July 8, 2009, before the government responded to his initial § 2255 motion. In addition to claiming that his conditional guilty plea was invalid, Claim 5 also adds an allegation to each of his other four claims that but for counsel's alleged error, Cousins would have rejected the plea agreement in favor of proceeding to trial.

Lemaster, 403 F.3d at 221. Consequently, the defendant's statements during the plea hearing "carry a strong presumption of verity," that presents "a formidable barrier in any subsequent collateral proceedings." Id. (quoting Blackledge, 431 U.S. at 74.) "Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

### B. Cousins' Valid Waiver

In open court on February 27, 2007, the magistrate judge placed Cousins under oath to tell the truth and questioned him carefully about the plea agreement and his understanding of its provisions and the consequences of his plea. Cousins indicated that he was born on November 30, 1971, that he finished the tenth grade in school, and that he was able to read, write, and understand English without difficulty. He denied having any medical problem that would impair his ability to participate fully in the proceeding, and he denied being under the influence of alcohol, medicine, or other drugs. Cousins indicated that he had been given ample opportunity to review the charges, to discuss them with counsel, and to prepare any defenses, and that he understood the felony charges against him and was satisfied with counsel's representation.

The prosecutor expressly described the conditional nature of Cousins' plea agreement:

> In his plea agreement, speaking of appeals, [Cousins] has waived his right to appeal any other—on any other grounds, any other basis, other than the rulings that Judge Conrad made in his February 1st, memorandum opinion. He also has given up his right to come back to court for the petition or motion to ask the District Judge, Judge Conrad, or one of his colleagues, to reopen his case and look at it for any reason at all [on collateral attack, including § 2255].

(Tr. 9-10, Feb. 27, 2007.) Cousins confirmed his understanding of the plea agreement terms and verified his signature at the end of it. (Id. 13.) Cousins denied that anyone had promised him anything outside the written plea agreement or tried to force or induce him to plead guilty. (Id. 14.) The prosecutor explained that Cousins was subject to a sentence of up to twenty years on some of the drug charges and up to ten years on others, while also subject to mandatory minimum consecutive sentences of five years and twenty-five years on the two firearms charges, and Cousins indicated that he understood the potential penalties.[2] (Id. 15-16.)

Cousins affirmed his understanding of the rights he was waiving by pleading guilty, including his right to appeal any issue other than the court's February 1, 2007 ruling on suppression and severance. (Id. 20.) Asked if he understood that he was waiving his right to bring a collateral attack, Cousins answered, "I certainly do, sir." (Id.) Cousins affirmed that he was, in fact, guilty of Counts 1-6 of the indictment and agreed with the prosecutor's summary of the government's evidence against him. (Id. 22, 22-26.) The magistrate judge found that each of Cousins' guilty pleas was knowingly and voluntarily made (Id. 27.), and the court, without objection from Cousins, adopted this finding.

Thus, the record itself indicates that Cousins entered a valid guilty plea and plea agreement waiver of his right to bring this action under § 2255. Unless he demonstrates extraordinary circumstances so as to overcome the presumption that his statements during the plea colloquy are the truth, he is bound by his waiver of the right to bring a § 2255 action.

---

[2] If Cousins had been convicted of all three charges under § 924(c), he would have been subject to mandatory minimum sentences totaling 55 years in prison.

## C. The November 19, 2004 Incident

In addressing the motion to suppress, based on the evidence presented during the suppression hearing on January 16, 2007, the court found the facts as follows:

> The defendant's charges arise from three incidents occurring on separate dates: November 19, 2004, June 14, 2005, and November 19, 2005. The first incident arose out of a traffic stop by Waynesboro Police Officer Kevin Miller. Miller stopped a black BMW because he thought that its exhaust system was too loud; according to Miller, he suspected that the car was in violation of Virginia Code § 46.2-1049, which requires vehicle exhaust systems to be maintained in good working order. Miller also thought the vehicle was in violation of the city's noise ordinance. Miller approached the vehicle, and noticed a partially concealed handgun between the console and the front passenger seat. Miller then drew his weapon, ordered the occupants of the car to keep their hands in view, and called for back-up. After the back-up arrived, Miller "frisked" the passenger compartment of the vehicle, and recovered two loaded Beretta 9 mm handguns. A trained narcotics dog alerted on the car, and a search of the trunk revealed a set of digital scales with white residue. Cousins was given his Miranda warnings, and said he was willing to speak to the police officer. Cousins admitted that he owned the scales and said the scales would test positive for methamphetamine, and possibly for cocaine. Cash, a police scanner, and several note pads with "owe sheets" were also found during the search. The defendant was placed under arrest. Afterwards, Cousins stated that he had given methamphetamine to the passenger, Jose Alvarez. Alvarez confirmed that he had received methamphetamine from Cousins.

(Mem. Op. 2, Feb. 1, 2007.)

According to the police report of the November 19, 2004 incident, after finding the first firearm between the seats, Miller asked Cousins if he had a concealed weapons permit, and Cousins admitted that he did not. (Dkt. No. 135, Exhibit B "Arrest Report dated November 19, 2004.") Once backup officers arrived, Miller and another officer frisked Cousins and his passenger for weapons; Cousins had $3000 in cash in his pockets. (Dkt. No. 135, Exh. B.) Miller also checked the vehicle for more weapons and discovered the second firearm "[u]nder the front passenger seat." (Id.) He also observed a police scanner between the front seats. (Id.)

After finding the second firearm, Miller called for a K9 unit and began searching the car, including the trunk, for additional firearms. (Id.) According to Cousins, officers also broke into a locked briefcase they found in the backseat area of the car and discovered "owe sheets" they believed to relate to drug trafficking. Cousins also states that when the narcotics dog arrived, officers placed the briefcase back in the car. The dog then alerted by the front passenger door.[3] (Cousins' Mem. Supp. Exhibit B.) At that point, officers searched the entire vehicle for possible narcotics and found the digital scales in the trunk. (Dkt. No. 135, Exh. B.) According to Cousins, an officer found the scales inside a duct-taped package inside a dufflebag in the trunk.

Miller then told Cousins about the items found in the car and read him Miranda rights. (Dkt. No. 135, Exh. B.) Cousins indicated his understanding of the warnings and said he would talk to Miller. (Id.) He admitted owning the scales and told Miller they would likely test positive for methamphetamine and cocaine. (Id.) Cousins also told Miller he had used methamphetamine earlier in the day. (Id.) Officers thereafter placed Cousins under arrest for distribution of methamphetamine and transported him to the police department. (Id.) Cousins was held overnight, and authorities released him the following day, when he also regained possession of his vehicle. (Tr. 31, Jan. 16, 2007.) Based on the evidence seized on November 19, 2004, state authorities charged Cousins with possession of methamphetamine and possession of a firearm while possessing drugs, but nolle prossed these charges in March 2006 in favor of the federal prosecution. (PSR ¶ 33.)

---

[3] Cousins asserts that from his vantage point in the police cruiser, he saw the narcotics dog make two complete passes around the car without alerting; he claims the dog alerted only after the K9 Unit officer hit the front passenger door with his hand and spoke to the dog. (Dkt. No. 1, 30-32.) Cousins does not indicate that he informed counsel of the behavior he allegedly witnessed, however.

### D. No Extraordinary Evidence Indicating Invalid Plea

Cousins asserts that from counsel's discussions with him, he believed that his guilty plea was conditioned on his reservation of his right to appeal the constitutionality of his detention at the scene of the traffic stop and the search of his car on November 19, 2004. Counsel raised these arguments on appeal. Because he had not raised them before the trial court, however, the Fourth Circuit found them to be waived and addressed the "constitutionality of the initial stop" as the only issue preserved for appellate review. Cousins, 291 Fed. App'x at 498. As stated, Cousins now argues that counsel was ineffective in failing to challenge the detention and search at the suppression hearing. Based on Cousins' alleged misunderstanding that his conditional plea would allow him to raise these issues on appeal, Cousins asserts that his plea and his waiver of § 2255 rights must be invalidated as unintelligent. He also asserts that if counsel had challenged his detention and various aspects of the search, the motion to suppress would have succeeded, and he would not have pleaded guilty to the charges related to that evidence. These claims are wholly inconsistent with the record and Cousins' statements to the court under oath.

The motion to suppress, filed by Cousins' first court-appointed counsel, argued only that Miller did not have "reasonable articulable suspicion of any traffic infraction and that nothing was wrong with [Cousins'] muffler system at the time of the stop." (Dkt. No. 20.) Trial counsel has submitted an affidavit in which he states that before the suppression hearing, he discussed with Cousins the possibility of raising additional arguments in the suppression motion regarding Miller's detention of Cousins at the scene and the searches of the vehicle. The affidavit indicates that trial counsel discussed with Cousins the pros and cons of the various arguments that might have been pursued in challenging other incidents of the stop and search, beyond those raised in

the motion filed by prior counsel, and generally covering all of these now advanced by Cousins in his § 2255 ineffective assistance claims. Trial counsel's affidavit in this regard is not now disputed by Cousins. While Cousins may or may not have received the best advice from counsel regarding these particular legal issues, the fact that Cousins understood what claims were subject to the waiver cannot now be challenged.

The record establishes that Cousins was well informed and acknowledged under oath that his guilty plea was conditioned on his reservation of the right to appeal only the court's February 1, 2007 ruling, which he knew addressed only the lawfulness of the initial stop on November 19, 2004. As stated, the suppression motion itself challenged only the initial stop. Likewise, the argument and the evidence presented at the suppression hearing on January 16, 2007, in which Cousins participated, focused exclusively on the constitutionality of the traffic stop on November 19, 2004.[4] Indeed, the evidence at the suppression hearing did not include any testimony whatsoever about Miller's removal of Cousins and his passenger from their vehicle, about his placing them in handcuffs in a police vehicle, or about the specific locations in Cousins' vehicle where officers discovered the owe sheets and scales. The court's memorandum and order denying the motion to suppress, based solely on the evidence adduced at the suppression hearing, addressed only the legality of the initial stop and not the detention or search issues.

---

[4] At the start of the suppression hearing, the court asked defense counsel how he wished to proceed, and counsel stated, "[Officer Miller] stopped Mr. Cousins because of a problem, a perceived problem, with the exhaust system. And our argument is going to be that that was insufficient as a matter of law to detain Mr. Cousins and thereby lead to the eventual discovery of the weapons." (Tr. 3, Jan. 16, 2007.) Before calling his first witness, the prosecutor asked the court, "By way of introduction, Judge, as I understand, we are talking about the initial stop?" The court answered, "Apparently so." (Id. 4.)

The plea proceedings clearly placed Cousins on notice of the limited right to appeal he would have under the agreement. Section 2 of the plea agreement informed Cousins that he was reserving his right to appeal only as to "the court's Memorandum and Order entered February 1, 2007." The prosecutor reviewed this limited appeal right during the plea colloquy, and Cousins confirmed his understanding of this plea agreement term. (Tr. 9-10, 20, Feb. 27, 2007.) As the magistrate judge's report expressly noted, the prosecutor reviewed the elements of the plea agreement in some detail, including "the defendant's waiver of his right to appeal any sentencing issues other than those related to the pretrial rulings about which the defendant expressly reserved his right of appeal" and "the defendant's waiver of any right to make any 28 U.S.C. § 2255 attack on the judgment or any part of the sentence in this case." (Report 3, Mar. 2, 2007.) Cousins affirmed his understanding of the plea agreement during the plea hearing itself and made no objection to the report's characterization of the nature of his waiver. Therefore, the court adopted the report and accepted his plea. Until his appeal, Cousins did not challenge the constitutionality of his arrest or the searches of his vehicle on November 19, 2004.

Thus, the record indicates that Cousins was well aware that he could have moved for suppression of the November 19, 2004 evidence based on his detention at the scene and the searches of the car. He considered the possibility of addressing these issues and, based on the benefits of the plea agreement, knowingly waived his right to pursue them in a § 2255 motion. Cousins' current claims—that he did not know about these additional suppression challenges or that he believed his plea would allow him to appeal them—directly contradict his statements under oath during the plea hearing. In fact, his plea colloquy statements indicate his unequivocal understanding that (1) under the plea agreement, he reserved the right to appeal only the court's

February 1, 2007 ruling, which he knew concerned only the initial stop; (2) he was waiving his right to appeal or to bring a § 2255 action regarding any additional arguments concerning his conviction or sentence, and (3) he was doing so, voluntarily, in exchange for the huge sentencing advantage that the plea agreement offered him. The fact that counsel might have made additional arguments in support of the suppression motion does not constitute an extraordinary circumstance overcoming the presumption that Cousins must be bound by his colloquy statements and the plea agreement waiver of § 2255 rights that resulted from those statements. Claims under § 2255 based on assertions so directly contradictory to the defendant's colloquy statements must be dismissed. Lemaster, 403 F.3d at 220.[5] Accordingly, the court will grant the motion to dismiss.

### III. Conclusion

In summary, this is not a case in which the government is seeking to enforce a plea agreement in which the defendant merely waived his right to collaterally attack his judgment of conviction. Instead, in Cousins' case, the undisputed record establishes that Cousins and his attorney reviewed, weighed, and considered the legal issues and potential arguments that were preserved, as well as others that were waived, in the Rule 11(a)(1)(A) plea agreement. Given this record, the court concludes that the waiver of collateral remedies must be enforced. Accordingly, defendant's motion to vacate under 28 U.S.C. § 2255 shall be dismissed. An appropriate order will enter this day.

---

[5] See also United States v. Morgan, 284 Fed. App'x 79, 87 (4th Cir. 2008) (upholding plea agreement waiver of § 2255 rights and affirming district court's dismissal of defendant's ineffective assistance claim—that counsel failed to inform him accurately about the consequences of his guilty plea and potential penalties—as "inconsistent with statements he made under oath").

The defendant is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c), upon finding that the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Defendant has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. If defendant intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the defendant and to counsel of record for the government.

ENTER: This 7th day of December, 2009.

_____
United States District Judge